UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| REFUGIO GUERRERO ZUNIGA, | ) | No. CV 14-5725-PLA |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on July 29, 2014, seeking review of the Commissioner's denial of his application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before the undersigned Magistrate Judge on July 31, 2014, and August 21, 2014. Pursuant to the Court's Order, the parties filed a Joint Stipulation on March 26, 2015, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on February 28, 1954. [Administrative Record ("AR") at 123.] He has past relevant work experience as a grinder. [AR at 29, 47.]

On June 15, 2012, plaintiff protectively filed an application for a period of disability and DIB, alleging that he has been unable to work since October 25, 2011.[1] [AR at 25, 123, 127.] After his application was denied initially, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 25, 70-71.] A hearing was held on January 24, 2014, at which time plaintiff appeared represented by an attorney, and testified, with the assistance of a Spanish interpreter, on his own behalf. [AR at 34-55.] A vocational expert ("VE") also testified. [AR at 43-53.] On February 7, 2014, the ALJ issued a decision concluding that plaintiff was not under a disability from October 25, 2011, the alleged onset date, through February 7, 2014, the date of the decision. [AR at 25-30.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 17-18.] When the Appeals Council denied plaintiff's request for review on June 9, 2014 [AR at 1-7], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a

---

[1] Plaintiff initially alleged an onset date of September 26, 2011. [AR at 123.] He subsequently amended the alleged onset date to October 25, 2011. [AR at 127.]

2

conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

**A.   THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in

substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since October 25, 2011, the alleged onset date.[2]  [AR at 27.]  At step two, the ALJ concluded that plaintiff has the severe impairments of diabetes mellitus, hypertension, and neuralgia. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listings. [AR at 28.]

---

[2]   The ALJ concluded that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2016.  [AR at 27.]

The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform light work as defined in 20 C.F.R. § 404.1567(b),[4] as follows:

> [Plaintiff is] able to lift 10 pounds frequently and 20 pounds occasionally; able to stand and/or walk six hours in an eight-hour workday; able to sit six hours in an eight-hour workday; and able to perform frequent climbing, balancing, stooping, kneeling, crouching, and crawling.

[Id.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is able to perform his past relevant work as a grinder, as actually performed by plaintiff. [AR at 29, 50.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of October 25, 2011, through February 7, 2014, the date of the decision. [AR at 30.]

## V.
## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when he: (1) assessed plaintiff's RFC; (2) evaluated the opinions of plaintiff's treating physician; and (3) evaluated plaintiff's credibility and subjective symptom testimony. [Joint Stipulation ("JS") at 3.]

As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

---

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b).

A.   RFC ASSESSMENT

Plaintiff contends that the ALJ erred in assessing plaintiff's RFC because the RFC does not take into consideration the ALJ's step two finding of neuralgia, including plaintiff's complaints of neck pain and pain in the upper right extremity, and because the ALJ "did not have access to" plaintiff's most recent MRI when he found that the opinion of Felix Nunez, M.D., plaintiff's treating physician, was supported by "little objective evidence." [JS at 4-5.] Plaintiff also contends the ALJ erred in finding that the record reflected weakness "and pain of the upper extremities since July 2013," when in fact plaintiff had been complaining of "right side pain of the shoulders and legs since October 11, 2012." [JS at 4 (citing AR at 27, 282).] Specifically, plaintiff argues that limitations to plaintiff's right upper extremity would have a direct impact on his ability to perform his past work as a grinder, which required "consistent use" of plaintiff's bilateral upper extremities.[5] [Id. (citing AR at 154, 155).]

On December 6, 2013, Dr. Nunez completed a Physical Residual Functional Capacity Questionnaire. [AR at 290-94.] He indicated that plaintiff's symptoms included "[b]ilateral upper extremity pain and pronounced weakness," and stated that he was "[u]nable to grasp with progressively less upper extremity strength." [AR at 290.] Dr. Nunez described plaintiff's clinical findings and objective signs as "grasp diminished . . . [e]xtensive pain and weakness with abduction." [Id.] He stated that analgesics and Neurontin had been only minimally effective. [Id.] Dr. Nunez opined that plaintiff was incapable of even a low stress job; could sit or stand for fifteen minutes at a time before having to get up; could sit or stand/walk for less than two hours in an eight-hour workday; could rarely lift less than ten pounds; could occasionally look down, turn his head right or left, look up, and hold his head in a static position; could occasionally stoop, crouch, climb ladders or stairs, and only rarely twist; would have significant limitations with reaching, handling or fingering, and could use his right and left hand, fingers, or arms 0% of the time for

---

[5]   The ALJ's hypothetical to the VE assumed that the work of a grinder was to be performed at the light level (as performed by plaintiff), not at the medium level as classified by the Dictionary of Occupational Titles. [AR at 49-50.] At the light level of work, in addition to requiring the ability to exert force up to twenty pounds, the position of grinder also requires frequent reaching. DOT No. 705.684-026.

6

grasping, turning twisting objects, fine manipulation, and reaching (including overhead). [AR at 292-93.] Dr. Nunez also estimated that plaintiff would be absent from work as a result of his impairments or treatment more than four days per month. [Id.]

The ALJ stated the following regarding plaintiff's upper extremity pain and Dr. Nunez' opinion:

> Notably, July 2013 treatment records include evidence of weakness and pain in the claimant's upper extremities and show diagnoses as follows: diabetes mellitus, hypertension, chronic pain in multiple sites, hyperlipidemia, and neuralgia, neuritis, and radiculitis, unspecified.
>
> However, while the record refers fleetingly to hyperlipidemia, as well as tremors, tinea pedis, and spondylosis, persistent and significantly limiting symptoms related to these impairments *are not documented for any period of 12 consecutive months*. . . . Notably, June 2013 x-rays of the claimant's cervical spine suggest spondylosis. Nonetheless, the record does not document persistent complaints of neck pain and impairment.
>
> . . . .
>
> The record documents the claimant's history of treatment by Dr. Nunez over several months in 2013. Nonetheless, the record does not document clinical signs and findings consistent with the degree of limitation assessed by Dr. Nunez and as alleged by the claimant. To the contrary, Dr. Nunez seems to endorse the claimant's subjective complaints to a significant degree. The medical evidence of record documents little objective evidence of impairment. Notably, October 2013 treatment records specifically indicate that the claimant's diabetes and hypertension have been stable and that the claimant denies dysesthesia and transient weakness or tremors.

[AR at 27, 29 (citations omitted) (emphasis added.] The ALJ found that the September 11, 2012, assessment by the State Agency reviewing physician was "more consistent with the reliable medical evidence and is a very limiting residual functional capacity." [Id. (citing AR at 56-62).] The State Agency physician found that plaintiff was able to perform a full range of light work and could lift ten pounds frequently and twenty pounds occasionally; stand and/or walk for six hours in an eight-hour workday; sit six hours in an eight-hour workday; and perform frequent climbing, balancing, stooping, kneeling, crouching, and crawling. [Id.]

The Court has carefully reviewed the record and finds that -- contrary to the ALJ's statement [see AR at 27] -- the record *does* document persistent complaints of neck pain and impairment for a consecutive twelve-month period, that started prior to mid-2013. For example,

plaintiff testified at the hearing that the pain started "mainly in [his] right arm" four or five years prior to the January 24, 2014, hearing, and stated that he did not have health insurance at the time so was unable to "do anything about it."[6] [AR at 53-54.] That plaintiff may have been experiencing pain in the past appears to be corroborated in part by the fact that there were two x-rays taken of plaintiff's right shoulder -- one in 2006 and one in 2008 -- although the results of both x-rays were "unremarkable." [AR at 229, 230.] Plaintiff's next complaint of shoulder pain is reflected in a March 1, 2011, treatment record from the All Care Medical Group, where plaintiff presented complaining of right shoulder pain that had started two months before, and right hand tremors that had started four years earlier. [AR at 224.] The treating provider ordered x-rays of the cervical spine and of the shoulder but there is no indication that these were ever done. [AR at 225.] A May 10, 2012, work-related "Extensive Back Assessment" conducted by CareOnSite Medical Services, found low average grip strength and noted that plaintiff demonstrated "poor ability to perform heavy lifting."[7] [AR at 255.] On October 11, 2012, and again on October 27, 2012, plaintiff complained to his treating provider at the St. Francis Medical Center,[8] of right side pain in the shoulder and legs that he had been experiencing for "years." [AR at 278, 282.] On October 11, 2012, the treating provider considered possible diabetic neuropathy. [AR at 282.] On October 27, 2012, the treatment note reflects a decreased range of motion of the right shoulder. [AR at 278.] Plaintiff again complained of right shoulder pain at visits on February 15, 2013, February 21, 2013, March 26, 2013, and April 25, 2013. [AR at 268, 271, 273, 275.] These records also noted that plaintiff reported experiencing the pain "always" or for "years," and rated the severity

---

[6] The Court notes that an ALJ may not reject symptom testimony where a claimant has a "good reason" for not seeking treatment, i.e., the claimant is uninsured or unable to afford medical care. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1297 (9th Cir. 1999).

[7] The report indicated that the job required lifting up to sixty-five pounds occasionally. [AR at 255.]

[8] It appears that plaintiff saw a physician's assistant at his visits to St. Francis Medical Center, whose notes were reviewed by Jatin Bhatt, M.D. [See, e.g., AR at 268, 271, 273, 275, 278.]

8

at either nine or ten on a ten-point scale. [Id.] On June 14, 2013, plaintiff presented at the Bell Gardens Family Medical Center ("BGFMC"), again complaining of severe right-sided upper extremity pain. [AR at 332.] Cervical spine x-rays were ordered. [Id.] The x-rays were taken on June 18, 2013, and showed spondylosis of the cervical spine. [AR at 343.] On June 21, 2013, the treating provider at BGFMC reviewed the x-rays, noted radiculopathy, and stated that the x-rays showed *significant* degenerative disc disease. [AR at 331.] The provider also stated that the symptoms "could be related to shoulder." [Id.] On July 19, 2013, Dr. Nunez, plaintiff's treating physician at BGFMC, indicated that plaintiff's upper extremity strength tests were "abnormal" bilaterally, and that his cervical spine was "tender." [AR at 326.] He stated that plaintiff's chronic cervical spine pain symptoms are "causing severe pain & weakness of Bilat upper extremeties," "are not yet controlled," and referred plaintiff to an orthopedist. [Id.] Dr. Nunez diagnosed neuralgia, neuritis, and radiculitis, unspecified and uncontrolled. [AR at 324.] He stated that there had been a recent recurrence in symptoms, that the pain persists and radiates, and that there was weakness in the bilateral shoulders and arms. [Id.] On September 20, 2013, Dr. Nunez again noted that plaintiff's neuralgia, neuritis, and radiculitis symptoms were "not yet controlled," advised plaintiff to use analgesics as prescribed, and noted that a referral to the orthopedist was "in process" to "[c]onsider [the] possibility of spinal stenosis." [AR at 319.] He also noted that plaintiff had "[l]ess strength," and his pain medications were not helping. [AR at 316.] On October 25, 2013, Dr. Nunez indicated that plaintiff was to be referred for an MRI of his cervical spine, and of his right shoulder, "ASAP." [AR at 307.] On January 3, 2014, Dr. Nunez noted that he had prescribed a narcotic -- Vicodin -- "to attempt to lessen [plaintiff's] pain," recommended that plaintiff continue to take Ativan "for rest in [the] evening," and noted that plaintiff's previously prescribed medications were not effective. [AR at 347.] Dr. Nunez also stated that he was referring plaintiff for an MRI through the managed care plan. [Id.] On January 30, 2014, the MRI was conducted and the findings indicated degenerative disc disease, "most pronounced at the C5-6 level; Broad-based posterior disc bulge [3 mm]. Bilateral asymmetrical moderate lateral recess

and neural foraminal narrowing, more severe on the right side."[9]  [AR at 350.]

As can be seen from plaintiff's medical history, plaintiff has been complaining to his physicians of right side shoulder or upper extremity pain off and on since 2006, and regularly since at least October 2012.  Accordingly, the ALJ's finding that "notably," despite the June 2013 x-rays "suggesting" spondylosis,[10] there was no documentation of persistent *complaints* of neck pain and impairment, is not supported by substantial evidence.  Remand is warranted on this issue.

**B.    TREATING PHYSICIAN AND PLAINTIFF'S CREDIBILITY**

Plaintiff also contends that the ALJ improperly rejected the RFC suggested by Dr. Nunez, "which places Plaintiff at a less than sedentary level," and that the January 2014 MRI provides additional objective support for Dr. Nunez' opinion. [JS at 4-5.]  Plaintiff complains about the ALJ's reliance on the opinion of a "non-examining doctor who gave his opinion in September of 2012, without the benefit of the X-ray or MRI of the Plaintiff's cervical spine." [JS at 14.]  The opinion of a non-examining physician may only serve as a basis to reject the opinion of a treating physician where the non-examining physician's opinion is consistent with other independent evidence in the record.  Ryan, 528 F.3d at 1202 ("The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician") (internal citation and quotation marks omitted).  Although the ALJ generally found the reviewing physician's opinion to be "more consistent with the reliable medical evidence," as discussed above the medical evidence subsequent to the reviewing physician's assessment -- and even some evidence prior to that assessment -- provides documentation of plaintiff's complaints of upper extremity pain and cervical impairment.  [AR at 29.]  On remand, the ALJ shall reconsider the opinions of all of plaintiff's providers, treating or

---

[9]  Although the MRI was conducted after the hearing date, these records were submitted to the Appeals Council for review.  [AR at 5.]

[10]  The June 2013 x-rays did not merely "suggest" spondylosis; the 'impression" clearly states "Spondylosis of the cervical spine" [AR at 343], and the subsequent treatment note states that the June 2013 x-ray showed "sig[nificant] DJD [degenerative disc disease]."  [AR at 331.]

otherwise, in determining plaintiff's RFC. Additionally, because the ALJ's reconsideration of the medical evidence documenting plaintiff's upper extremity pain/neuralgia may also impact on the ALJ' s evaluation of plaintiff's credibility, plaintiff's subjective symptom complaints shall also be reconsidered on remand.

## VI.
## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter v. Astrue, 504 F.3d 1028, 1041 (9th Cir. 2007); Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, the ALJ on remand shall reassess the medical records, including, but not necessarily limited to, the records relating to plaintiff's upper extremity pain and cervical impairments. In assessing the medical opinion evidence of record, the ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any portion of the opinion that the ALJ discounts or rejects, including a legally sufficient explanation for crediting one doctor's opinion over any of the others. Second, the ALJ shall reassess plaintiff's subjective allegations and either credit his testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony. Third, the ALJ shall reconsider all of plaintiff's limitations in making his RFC determination. Finally, with the assistance of a VE, if warranted, the ALJ shall proceed through

step four and, if warranted, step five to determine whether plaintiff can perform his past relevant work or any other work existing in significant numbers in the national economy.

## VII.
## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: May 11, 2015

　　　　　　　　　　　　　　　　　　　／s／ Paul L. Abrams
　　　　　　　　　　　　　　　　　　　PAUL L. ABRAMS
　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE